■ MARTIN REINGOLD, Appellant, v KEYSTONE TRADE & DEVELOPMENT CORP. et al., Respondents. — Order, Supreme Court, New York County,

entered August 1, 1980, which denied the plaintiff's motion for summary judgment, reversed, on the law, without costs and disbursements, and the motion granted. Plaintiff sold the individual defendant Topper a one-third interest in a close corporation represented by 20 shares of stock therein. In payment, Topper issued promissory notes, and having stopped payment on the balance of same, plaintiff instituted this action to recover the balance due. Defendant Topper justifies his stopping payment on the notes by alleging that plaintiff and the other remaining shareholder, Goldstein, each having a one-third interest in the close corporation, unjustifiably discharged him as an employee in breach of an alleged oral agreement for long-term employment. Under the circumstances herein, the parol evidence rule precludes evidence of an oral employment agreement as a defense. Assuming such agreement, there also may well be a Statute of Frauds defense. In any event, no counterclaim is urged by defendant Topper as a consequence of the alleged breach. Defendants do not sufficiently make a meritorious showing that part of the consideration for the issuance of the notes was the hiring by the close corporation, into which Topper was buying, of Topper for long-term employment so as to warrant denial of summary judgment relief. Concur — Ross, J. P., Markewich, Lupiano and Silverman, JJ.

Bloom, J., dissents in part in a memorandum as follows: I am in accord with the conclusion of the majority that summary judgment is warranted in this case. Nevertheless, I would stay execution of the judgment pending final disposition of the dissolution proceedings brought by defendant pursuant to subdivision (a) of section 1104 of the Business Corporation Law. Defendant Topper, through his wholly owned corporation Keystone, purchased from Reingold, a one-third interest in two close corporations, one operating a pharmacy in the New York Sheraton Hotel and the other operating a pharmacy at the New York Hilton Hotel. Apparently, the interest in the New York Sheraton pharmacy was purchased in cash while the New York Hilton interest was paid for by notes. It is contended that part of the arrangement among the parties was an oral agreement under which Topper was to be employed as the manager of one of the establishments. The duration of such employment was not fixed. For the first year the arrangement seemed to work well, for Topper's salary was raised from $30,000 a year to $75,000. For some reason not disclosed, Topper was discharged. Following his discharge Topper defaulted on the notes given by him to Reingold and this suit followed. Shortly after the commencement of this action Topper brought separate proceedings to dissolve the two corporations under the recently enacted subdivision (a) of section 1104 of the Business Corporation Law. These matters appeared on the calendar of Special Term, Part I, on May 20, 1980, and by decision which appeared in the *New York Law Journal,* on November 24, 1980, Justice Ryp found that the "undisputed understanding was such at the time of the formation of the corporations that the respondents' actions have severely damaged petitioner's reasonable expectations and constitute a freeze-out of petitioner's interest; consequently, they are deemed to be 'oppressive' within the statutory framework" (NYLJ, Nov. 24, 1980, p 12, col 5). Since respondents in the Business Corporation Law proceedings had indicated a willingness to purchase Topper's stock interest, Justice Ryp, rather than resort to the drastic remedy of dissolving two profitable close corporations, selected the alternative provided by subdivisions (a) and (b) of section 1118 of the Business Corporation Law. He referred the determination of the fair market value of the shares of the two corporations as of the day prior to the institution of the proceeding to Trial Term, Part 7 to hear and report with recommendations. We are not in-

formed of what has happened since then. Where summary judgment is granted, the court has wide discretion in fashioning measures to avoid possible prejudice to the party against whom judgment is granted (*Stigwood Organisation v Devon Co.,* 44 NY2d 922). Usually such measures are invoked when summary judgment has been granted to a plaintiff who faces a counterclaim which exceeds the amount of plaintiff's claim. Whatever the circumstances, a stay is used sparingly and only when the interests of justice so mandate. While this action and the Business Corporation Law proceedings are separate and distinct, they are part and parcel of a single whole. Indeed, they are inextricably linked. Their subject matter is, largely, the same stock. The Business Corporation Law proceeding is somewhat more expansive for it deals with the shares purchased for cash as well as those paid for by the notes. However, the issues, in their broader aspects, are the same. Plaintiff is amply protected, for the judgment here involved can be paid for out of the moneys required to be paid to Topper in the Business Corporation Law proceeding, both by plaintiff and by Goldstein, the third member of the triumvirate. In short, when the Business Corporation Law proceeding is completed, Reingold and Goldstein or either will be the owners of Topper's shares as of the day prior to the institution of the Business Corporation Law proceeding subject only to the requirement that they pay the price fixed therefor. Elementary fairness suggests that Topper not be required to pay for the shares which, in reality, he no longer owns until the Business Corporation Law proceeding is determined and the amount owing to him by Reingold and Goldstein as payment for these selfsame shares is fixed. Accordingly, I would stay the execution of the judgment resulting from our determination pending final determination of the Business Corporation Law proceeding.